1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

YERALDINNE SOLIS,

                                    Plaintiff,

        v.

COTY, INC.; NOXELL
CORPORATION,

                                    Defendants.

Case No. 22-cv-0400-BAS-NLS

**ORDER:**

**(1)   GRANTING MOTION TO
        DISMISS PURSUANT TO FED.
        R. CIV. P. 12(b)(1) (ECF No. 19);
        and**

**(2)   GRANTING PLAINTIFF LEAVE
        TO FILE SECOND AMENDED
        COMPLAINT**

        Plaintiff Yeraldinne Solis ("Solis") brings this consumer-protection class action against Defendants Coty, Inc. ("Coty") and Noxell Corporation ("Noxell," together with Coty, "Defendants"). She alleges she purchased Defendants' beauty product marketed as "safe" and "sustainable," when it contains harmful and carcinogenic chemicals called PFAS. (*See generally* Am. Compl., ECF No. 13.) Now before the Court is Defendants' motion to dismiss ("Motion"). (Mot., ECF No. 19.) Solis opposes (Opp'n, ECF No. 20) and Defendants reply (Reply, ECF No. 22.) Having considered the record of this case, the parties' briefing, and the relevant case law, the Court **GRANTS** Defendants' Motion and

- 1 -

**DISMISSES WITHOUT PREJUDICE** the Amended Complaint for lack of subject-matter jurisdiction.[1]

## I.    BACKGROUND

### A.    Factual Background[2]

Coty is a foreign corporation with its principal place of business located in New York, New York.   (Am. Compl. ¶ 14.)   Coty owns CoverGirl Cosmetics brand ("CoverGirl").   (*Id.*)   Noxell is a subsidiary of Coty.   (*Id.* ¶ 15.)   Together, Defendants formulate, design, manufacture, advertise, distribute, and sell CoverGirl's line of beauty products.   (*Id.* ¶ 1.)

In December 2021, Solis purchased a unit of CoverGirl's TruBlend Pressed Powder (the "Product") from a retail store in Escondido, California.   (Am. Compl. ¶ 13.)   Prior to purchase, Solis reviewed the Product's "packaging" and "labeling," images of which are provided both in the Amended Complaint at Paragraph 28 and at Exhibit K to Defendants' Request for Judicial Notice.   (*See id.* ¶ 28; Ex. K to RJN, ECF No. 19-13.)   In particular, she read the statements on the Product's label, located on the backside of the Product's

---

[1] Both parties have filed requests peripheral to the Motion.  Defendants submitted alongside their Motion a Request for Judicial Notice  (Request for Judicial Notice ("RJN"), Ex. 2 to Mot., ECF No. 19-2) and, shortly after Defendants filed their Reply, Solis moved *ex parte* for leave to file a Notice of Supplemental Authority (Notice, ECF No. 25).  The Court **GRANTS** Defendants' request for judicial notice as to Exhibit K, color photographs of the packaging and labeling of the cosmetic product at issue. (Photographs, Ex. K to RJN, ECF No. 19-13); *see Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1098–99 (S.D. Cal. 2015) ("Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging."); *Chaudry v. Cnty. of San Diego*, No. 21cv1847-GPC (AHG), 2022 WL 17652794, at *3 (S.D. Cal. Dec. 13, 2022) (opining that "[c]onsidering documents subject to judicial notice is not inconsistent with a facial challenge on subject matter jurisdiction" and collecting authorities).  The Court **DENIES AS MOOT** the remainder of Defendants' request for judicial notice because the Court did not rely on any of the exhibits therein to resolve the pending Motion.

   The Court **GRANTS** Solis' request for leave to file her Notice of Supplemental Authority—a decision by a district court within the Ninth Circuit authored and published after Defendants' Reply, which Solis claims buttresses her position.  (Notice at 1 (citing *Galgetta v. Walmart, Inc.*, No. 3:22-cv-3757-WHO, 2022 WL 17812924, at *1 (N.D. Cal. Dec. 19, 2022)).)

[2] These facts are all taken from the Amended Complaint.  (*See* ECF No. 13.)  The Court accepts as true all non-conclusory factual allegations set forth therein.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

packaging, which states the Product is "dermatologically tested" and "suitable for sensitive skin." (*Id.* ¶ 7.)



She also alleges she poured over statements in CoverGirl's and Coty's websites, as well as a Coty investor report, prior to purchasing the Product. (Am. Compl. ¶¶ 21–29.) Specifically, Solis avers she reviewed:

- A statement on CoverGirl's website that, "[A]t COVERGIRL we hold ourselves to the highest quality standards when it comes to the safety and efficacy of our products." (*Id.* ¶ 21.)

- A statement on CoverGirl's website that the brand is "championing open, inclusive and sustainable beauty." (*Id.* ¶ 22.)

- A statement on CoverGirl's website explaining it "uses a wide array of testing methods to assess and ensure [their] products remain safe" and will "continue to invest in the latest alternative testing technology and innovation to ensure [it is] delivering safe, high-quality products." (*Id.* ¶ 23.)

- A statement on Coty's website that it is "changing the way [it] design[s], formulate[s], and manufacture[s], in order to minimize [its] environmental impact and create more innovative, cleaner products." (*Id.* ¶ 24.)

- A statement on Coty's website, which provides, "By working hand-in-hand with [its] ingredients suppliers, [Coty] use[s] the latest innovation and technology, applying green science to minimize the pressure of [its] products on natural resources." (*Id.*)

- A statement on Coty's website that its "products have an important role to play in building a sustainable future" and that "sustainability is at the heart of [its] product creation, from design and development through the procurement of materials." (*Id.* ¶ 25.)

- A statement on Coty's website that it "constantly strive[s] to develop products that reflect [its] consumers' evolving needs.  Increasingly this means clean products that meet consumer demand for ingredient transparency and minimalist safe formulas, that don't compromise on product quality." (*Id.* ¶ 26.)

- A Coty investor report, which states, "In the U.S., Covergirl continues to show that the brand is on a sustainable path of improvement and growth as it has grown and maintained share in 6 of the last 9 months since the new brand equity was launched." (*Id.* ¶ 29.)

Solis alleges that she believed the Product to be "safe for use and[] otherwise sustainable" based upon the above-mentioned representations and, thus, purchased the Product in reliance upon the truthfulness of those representations.  (Am. Compl. ¶¶ 12, 62 ("Defendants' conduct deceived Plaintiff . . . into believing that the Product is safe and sustainable[.]").)   However, Solis claims Defendants' marketing is misleading, for the Product is neither "safe" nor "sustainable," but rather it is "unfit for use" and "pose[s] a significant safety risk" because an organization called Toxin Free USA detected in samples of the Product heightened levels of organic fluorine, which are indicative of purportedly

- 4 -

22cv0400

harmful per- and polyfluoroalkyl substances (referred to above as "PFAS").[3]  (*Id.* ¶¶ 1, 6, 133.)

PFAS are a group of highly persistent, synthetic chemicals.  (Am. Compl. ¶¶ 2, 5.) According to the Food & Drug Administration ("FDA"), PFAS "are often intentionally added to certain products such as foundation, lipstick, eyeliner, eyeshadow, and mascara." (*Id.* ¶ 33 (citation and quotation marks omitted); *see id.* ¶ 32 ("PFAS are used in cosmetics due to their properties such as hydrophobicity and film-forming ability, which are thought to increase product wear, durability, and spreadability.").)  Although Solis does not contend there exists a federal or state regulation prohibiting the use of PFAS as an additive in cosmetic products, she avers that "PFAS are not necessary for the intended outcomes" and that several of Defendants' peers do not use PFAS in their products.  (*Id.* ¶ 34.)

Solis alleges it is beyond dispute PFAS are toxic and carcinogenic.  (Am. Compl. ¶ 40.)  Solis claims exposure to PFAS in humans increases the risk of cancer, liver damage, fertility issues, asthma, and thyroid disease, and cites a number of studies linking PFAS to those diseases and health complications.  (*Id.* ¶¶ 3 n.3, 30, 40–42 nn. 35–37.)  She avers cosmetics that contain PFAS raise a particularly disconcerting health risk because users apply beauty products directly to the face—in particularly absorptive areas such as near the eyes and mouth—and habitually.  (*See id.* ¶¶ 2, 7–8, 38–39.)  And "[b]ecause PFAS persist and accumulate over time, they are harmful even at very low levels."  (*Id.* ¶ 2.)

Crucially, Solis concedes, as she must, the Product's label discloses PTFE as one of its ingredients.  (*See* Am. Compl. ¶¶ 46–48; *see also id.* ¶ 28 (providing black-and-white picture of backside of Product's packaging, which contains a list of ingredients that includes "PTFE").)

---

[3] Solis alleges it is not yet scientifically feasible to test for PFAS directly, and that organic-fluorine screening is "the best current test method" available for detecting PFAS.  (Am. Compl. ¶ 4.)

Solis alleges PTFE—known more commonly as Teflon—is "a type of PFAS chemical." (*Id.* ¶ 46.)  Nevertheless, Solis alleges that because it is not yet scientifically feasible to isolate particular PFAS in a test sample, "the exact source of organofluorine" in the Product "cannot be determined to solely come from [PTFE]."  (*Id.* ¶ 48.)

### B.    Procedural History

On March 25, 2022, Solis filed an initial complaint.  (ECF No. 1.)  On April 27, 2022, Defendants filed a motion to dismiss.  (ECF No. 10.)  In lieu of filing an opposition, Solis filed her Amended Complaint.  (ECF No. 13.)  The Amended Complaint asserts 15 separately enumerated claims:  (1) unlawful, unfair, and fraudulent business practices in violation of California's Unfair Competition Law ("UCL") (*id.* ¶¶ 88–105); (2) violation of California's Consumer Legal Remedies Act (*id.* ¶¶ 106–20); (3) breach of the implied warranty under the Song-Beverly Act (*id.* ¶¶ 121–34); (4) violation of California's False Advertising Law ("FAL") (*id.* ¶¶ 135–47); (5) fraud (*id.* ¶¶ 148–56); (6) constructive fraud (*id.* ¶¶ 157–67); (7) fraudulent inducement (*id.* ¶¶ 168–77); (8) money had and received (*id.* ¶¶ 178–83); (9) fraudulent concealment (*id.* ¶¶ 184–96); (10) fraudulent misrepresentation (*id.* ¶¶ 197–204); (11) negligent misrepresentation (*id.* ¶¶ 205–11); (12) unjust enrichment (*id.* ¶¶ 212–20); (13) breach of express warranty (*id.* ¶¶ 221–30); (14) violation of the Magnuson-Moss Warranty ("MMW") Act (*id.* ¶¶ 231–39); and (15) negligent failure to warn (*id.* ¶¶ 240–49).  She brings these claims on behalf of herself, a nationwide class, and a California subclass.  (*Id.* ¶¶ 79–87.)

Defendants now move to dismiss the Amended Complaint pursuant to both Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject-matter jurisdiction and Rule

12(b)(6) for failure to state a claim upon which relief can be granted.  (*See* Mem. in Supp. of Mot., Ex. 1 to Mot. ("Mem."), ECF No. 19-1.)

In particular, Defendants assert the Amended Complaint fails to plead an injury-in-fact as a prerequisite of Article III standing.  (*See* Mem. at 9–12.)  They further aver Solis fails to state a single claim upon which relief can be granted because, *inter alia*:  (1) Solis' claims under California's consumer-protection statutes do not plausibly allege violations of the "reasonable consumer standard"; (2) Solis' claims for which fraud is an elemental lynchpin fail under Rule 9(b)'s heightened standard; (3) Solis' claims for breach of warranty fail—and, thus, so does her MMW Act claim—because she neither identifies an inaccurate statement in Defendants' marketing materials nor alleges the Product is unfit for its intended use;  (4) Solis' claims for unjust enrichment and money-had-and-received as currently formulated are precluded by California law; and (5) Solis has not alleged a non-economic injury as a prerequisite for her negligent failure to warn claim.  (*See id.* at 12–25.)

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Id.* (internal citations omitted).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (internal citations omitted); *see also Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006).

Under Rule 12(b)(1), a party may move to dismiss a claim based on lack of subject-matter jurisdiction.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010).  A Rule 12(b)(1) challenge to jurisdiction may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1036, 1039 (9th Cir. 2004), *cert denied*, 544 U.S. 1018 (2005).  In a facial challenge to subject-matter jurisdiction, the defendant contests the allegations in the complaint itself are insufficient to invoke subject-matter jurisdiction.  *Id.*

A district court assesses a facial challenge to subject-matter jurisdiction as it would a motion to dismiss under Rule 12(b)(6).  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).  That is, "all factual allegations in [the] complaint are taken as true and all reasonable inferences are drawn in [the plaintiff's favor]."  *Id.* (citing, *inter alia*, *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

Unlike on a facial challenge, where the district court generally is limited to the four corners of the pleading in determining whether it has subject-matter jurisdiction over a case, *see Thornhill Publ'g Co. v. Gen. Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979), on a factual challenge the defendant provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject-matter jurisdiction, *Meyer*, 373 F.3d at 1039.  Therefore, on a factual challenge, the allegations in a complaint are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert denied*, 489 U.S. 1052 (1989).  "Once the moving party has converted the motion to dismiss into a facial motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), *cert denied*, 541 U.S. 1009 (2004).  However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'"  *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983)).

Where, as here, a Rule 12(b)(1) motion is brought alongside a Rule 12(b)(6) motion, it is appropriate for the court to first consider and address the disputed jurisdictional issues under the former before analyzing the merits of a claim under the latter.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("[T]he jurisdictional question of standing precedes, and does not require, analysis of the merits." (quoting *Equity Lifestyle*

22cv0400

*Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008))).  If, upon analysis of the Rule 12(b)(1) motion, the court finds it lacks subject-matter jurisdiction over the action, it need not address the merits issues raised in the collateral Rule 12(b)(6) motion.  *Toyota Landscaping Co., Inc. v. S. Cal. Dist. Council of Laborers*, 11 F.3d 114, 117 (9th Cir. 1993); *Prather v. AT&T Inc.*, 996 F. Supp. 2d 861, 871 n.8 (N.D. Cal. 2013) ("Having concluded that it lacks subject matter jurisdiction over [plaintiff's] claim, the Court need not—and indeed cannot—address [d]efendants' alternate grounds for dismissal under Federal Rules of Civil Procedure 12(b)(6) and 9(b).").

## III.   ANALYSIS

Article III, Section 2 of the Constitution limits federal courts to hearing "actual cases or controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016).  This limitation means the plaintiff must have standing to sue.  *Id.* at 338.  To establish standing, a plaintiff must demonstrate the irreducible constitutional minimum of:  (1) an injury-in-fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation—that the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability—that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted).  "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stage of litigation.'" *Maya*, 658 F.3d at (quoting *Lujan*, 504 U.S. at 561).

To survive a facial attack directed at standing brought pursuant to Rule 12(b)(1), a plaintiff "must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *see also*  At this stage, the Court presumes to be true the factual allegations in the pleadings, and construes in favor of plaintiff all reasonable inferences therefrom.  *See Lujan*, 504 U.S. at 555 (instructing district courts to "presum[e] that general allegations embrace those specific facts that are necessary to support a claim" on a Rule 12(b)(1) facial challenge); *see also Bazile v. Fin.*

- 9 -

*Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) ("A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist." (citation omitted)); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) ("When the defendant asserts a 'facial' challenge to standing . . . it remains the case that courts should continue to draw from the pleadings all reasonable inferences in the plaintiff's favor[.]").

Here, the Rule 12(b)(1) component of Defendants' Motion is a facial challenge to subject-matter jurisdiction directed at the first element of standing:  injury-in-fact.  (*See* Mem. at 9–13.)  "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 at 339 (quoting *Lujan*, 504 U.S. at 560); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 597 (9th Cir. 2020).

Defendants contend Solis has alleged neither economic nor physical harm.  Thus, Solis fails to establish she suffered an injury-in-fact and, therefore, lacks standing to pursue any one of her 15 claims. (Mem. at 12–13.)  In response, Solis contends the allegations in her Amended Complaint give rise to an economic injury sustained as a result of her purchase of a unit of the Product in December 2021.  (Opp'n at 6–14.)  Thus, whether Solis has standing to pursue the instant lawsuit rises and falls with whether the Amended Complaint alleges, or contains facts that permit a reasonable inference, that Solis suffered a concrete and particularized economic injury arising from her purchase of the Product. *See Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) ("A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006))).

## A.    Concrete Injury-in-Fact

"A 'concrete' injury is one that 'actually exist[s],' meaning that it is 'real, and not abstract.'"  *Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022) (quoting *Spokeo*, 578 U.S. at 340).  "A 'quintessential injury-in-fact' occurs when plaintiffs allege that they 'spent

money that, absent defendants' actions, they would not have spent." *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 845 (N.D. Cal. 2018) (quoting *Maya*, 658 F.3d at 1069); *Moreno v. Vi-Jon, LLC*, No. 21-cv-21-56370, 2022 WL 17668457, at *1 (9th Cir. Dec. 14, 2022) (Mem.) ("[Plaintiff] alleged that he wouldn't have purchased or paid as much for [defendant's] products if he had known the truth about their effectiveness.   That is sufficient for an Article III injury.").

Solis argues the economic injury she allegedly suffered as a result of her December 2021 purchase of the Product qualifies as a "concrete" one.  Specifically, she avers she paid a premium for a unit of the Product on the basis it was "safe" and "sustainable," as Defendants' purportedly advertised, but that the Product was neither of those things because it contained heightened levels of organic fluorine indicative of allegedly harmful PFAS.  Thus, Solis claims the Product was worth far less than the amount she paid, and that, had she known of the health risks attendant to the Product, she either would not have spent her money on the Product or would have purchased it on different terms.  (Opp'n at 8 (citing Am. Compl. ¶¶ 7–9, 12).)

The parties agree that Solis seeks to invoke two theories of standing based upon economic injury:   (1) the "benefit-of-the-bargain" theory and (2) the "overpayment" theory.  (*See* Opp'n at 6–11; Mem. at 9–13.)  The Court addresses both theories in turn, below.

### 1.       Benefit of the Bargain Theory

A plaintiff adequately alleges a concrete economic injury when she adequately pleads "she bargained for a product worth a given value but received a product worth less than the value." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705–06 (9th Cir. 2020) (quoting *In re Johnson & Johnson Talcum Powder Prod. Mkt., Sales Prac. & Liab. Litig.* ("*In re Johnson & Johnson*"), 903 F.3d 278, 283 (3d Cir. 2018)).  This is known as the "benefit-of-the-bargain" theory of Article III standing.  *Id.*  To invoke such a theory, a plaintiff "must do more than allege that she 'did not receive the benefit she *thought* she was obtaining'"; she "must show that she did not receive a benefit for which she actually

*bargained*." *Id.* (emphasis in original) (quoting *In re Johnson & Johnson*, 903 F.3d at 283). Hence, the plaintiff must identify a specific misrepresentation about the elusive benefit, which allegedly was baked into the purchase price of the consumer item at issue. *See, e.g.*, *id.* at 705–06 ("Absent some allegation that [defendant] made false representations about [the product's] safety, [plaintiff's] benefit of the bargain theory falls short."); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961–62 (9th Cir. 2009) ("The plaintiffs' benefit of the bargain theory fares no better.  They have not alleged that they were deprived of an agreed-upon benefit in purchasing their [product].  The plaintiffs have not alleged that [defendant] made any misrepresentations . . . ."); *see also Estrada v. Johnson & Johnson*, No. 2:14-cv-1051-TLN-EFB, 2015 WL 1440466, at *4–5 (E.D. Cal. Mar. 27, 2015) ("Plaintiff received the benefit-of-the-bargain because she received the exact product she intended to purchase, unlike the cases she cites where the consumers received products that were mislabeled or defective." (footnote omitted)).

Solis claims the Amended Complaint contains ample facts to support her benefit-of-the-bargain theory of standing.  (*See* Opp'n at 8.)  She alleges that "she reviewed the labeling, packaging, and marketing materials of her Product"—prior to purchase—including representations on the Product's packaging it is "suitable for sensitive skin" and "dermatologically tested" and representations on Defendants' websites touting their products as "safe." (*Id.* (citing Am. Compl. ¶¶ 9–12).)  But Solis alleges that Defendants' representations about the Product's "safety" benefit are hollow and, more importantly, deceptively misleading, because the Product is, in fact, unsafe due to the presence of purportedly harmful PFAS therein. (*Id.* (citing Am. Compl. ¶ 6).)  Thus, Solis avers she was denied the benefit of the bargain when she purchased the Product in December 2021.

Defendants contend Solis' benefit-of-the-bargain theory fails because the Amended Complaint does not actually identify any affirmative representation—either on the Product's label or packaging or in Defendants' online marketing materials—that touts the Product as "safe" or PFAS-free.  (Mem. at 12–13.)  Moreover, Defendants argue the Product label's express disclosure that PTFE—which Solis concedes is a common type of

- 12 -

22cv0400

PFAS—is an ingredient forecloses Solis' benefit-of-the-bargain theory.  (*Id.*)  In support, Defendants direct the Court to the Ninth Circuit precedents of *Birdsong* and *McGee*, with which, they assert, the instant case rests on all fours.[4]  (*Id.*)  This Court agrees.

*Birdsong* involved a class-action in which plaintiffs sued Apple alleging the iPods they purchased were "defective because [they] pose[d] an unreasonable risk of noise-induced hearing loss to users." 590 F.3d at 956.  The *Birdsong* plaintiffs' theory of standing was premised upon the theory they were deprived of the benefit of safely listening to music, which they alleged was baked into the iPod's purchase price. *Id.* at 961.  The Ninth Circuit held the *Birdsong* plaintiffs lacked standing for failure to allege an injury-in-fact. *Id.*  It found significant that: (1) the *Birdsong* plaintiffs did not allege Apple made any representation that one of the iPod's benefits is that it enables users to "safely listen to music at high volumes for extended periods of time"; and (2) "Apple provided a warning against listening to music at loud volumes." *Id.*  Thus, the Ninth Circuit concluded the *Birdsong* "plaintiffs' alleged injury in fact [was] premised on the loss of a 'safety' benefit that was not part of the benefit of the bargain to begin with[]" and, thus, did not satisfy Article III standing requirements. *Id.*

In *McGee*, the plaintiff alleged that she had purchased defendant's popcorn believing it contained only safe and healthy ingredients, but later discovered it contained partially hydrogenated oil, a source of carcinogenic trans fat.  982 F.3d at 700.  Like the plaintiffs in *Birdsong*, the *McGee* plaintiff alleged standing under, *inter alia*, a benefit of the bargain theory.  Relying on *Birdsong*, the Ninth Circuit found the *McGee* plaintiff also lacked standing.  It held:

> McGee does not contend that [defendant] made any representation about [the popcorn's] safety.  Although she may have assumed that [the popcorn] contained only safe and healthy ingredients, her assumptions were not included in the bargain, particularly given the labeling disclosure that the product contained artificial trans fat.  Thus, even if those expectations were not met, she has not alleged that she was denied the benefit of the bargain.

---

[4] Although Defendants do not cite directly to *Birdsong*, they rely heavily upon *McGee*, which itself relies upon *Birdsong* as its foundational precedent.  (Mem. at 9, 11 (citing *McGee*, 982 F.3d at 700).)

22cv0400

1

2    *Id.* at 706.

3        Together, *Birdsong* and *McGee* stand for a simple legal premise:  where a plaintiff

4    seeks to allege an injury-in-fact arising from the purchase of a purportedly unsafe consumer

5    item, he or she is precluded from doing so based upon a "benefit of the bargain" theory

6    where (1) there is no identifiable misrepresentation concerning the purported benefit of

7    which the plaintiff was allegedly deprived and (2) the product's labeling or packaging

8    discloses the alleged benefit is not part of the bargain.

9        This Court finds *Birdsong* and *McGee* doom Solis' benefit-of-the-bargain theory.

10   Just as in *Birdsong* and *McGee*, Solis alleges the Product she received lacked a "safety"

11   benefit for which she never bargained in the first instance.  While Solis claims the Product's

12   label represents the cosmetic is "dermatologically tested" and "suitable for sensitive skin,"

13   Solis simply fails to draw a cogent nexus between those statements and her belief the

14   Product she purchased was PFAS-free.   There is an even weaker link between the

15   statements Solis identified in Defendants' online marketing materials and the purported

16   safety benefit Solis believed she had bargained for but did not receive.  Those statements

17   are far too generalized to reasonably be construed as representations about the Product's

18   PFAS content.   *Cf. Estrada*, 2015 WL 1440466, at *4 (concluding "general safety

19   statements on both of [d]efendants' websites" lacked "sufficient specificity to substantiate

20   an injury").   And the statement in Coty's investor report that, "In the U.S., Covergirl

21   continues to show that the brand is on a sustainable path of improvement and growth as it

22   has grown and maintained share in 6 of the last 9 months since the new brand equity was

23   launched" (*see* Am. Compl. ¶ 29), clearly concerns Defendants' business performance, not

24   the safety and sustainability of Defendants' products.

25       Moreover, as *Birdsong* and *McGee* instruct, Solis is not free to ignore the ingredient

26   list on the Product's label.  *See also Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp.

27   3d 8, 20 (N.D. Cal. 2020) ("[W]here the actual ingredients are disclosed, a plaintiff may

28   not ignore the ingredient list.") (collecting authorities).  Indeed, Solis *expressly* alleges (1)

- 14 -

22cv0400

the Product's label expressly discloses it contains PFAS because it lists PTFE—a type of PFAS—as one of its main ingredients and (2) she reviewed the Product's label prior to purchase. (Am. Compl. ¶¶ 13 (alleging Solis reviewed the Product's label), 28 (excerpting images of Product's label), 46–48 (alleging PFTE is a PFAS)).

Simply put, Solis avers she purchased the Product based on her *belief* it was PFAS-free and, thus, "safe" and "sustainable." (*See*, *e.g.*, Am. Compl. ¶ 62 ("Defendants conduct deceived Plaintiff . . . into believing the Product is safe and sustainable, when it is not.").) But it is clear from the Product's label that a PFAS-free cosmetic powder was not part of the benefit of the bargain and, thus, Solis' belief was mistaken.  Because Solis cannot identify a misrepresentation in Defendants' marketing materials or allege the Product was mislabeled, this case is easily distinguishable from those she cites, in which this Court's sister tribunals found valid benefit-of-the-bargain theories.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (holding plaintiff who purchased from defendant department store items for prices advertised as "discounted" but that were actually the "original"  prices suffered a concrete economic injury under the benefit-of-the-bargain theory of standing); *Berke v. Whole Foods Mkt., Inc.* No. CV 19-7471 PSG (KSx), 2020 WL 5802370, at *7 (C.D. Cal. Sept. 18, 2020) (distinguishing facts in case at hand from *Birdsong* on basis that plaintiff adequately alleged defendant had engaged in "false or misleading advertising").

Accordingly, this Court finds *Birdsong* and *McGee* preclude Solis from invoking the benefit-of-the-bargain theory to demonstrate a concrete economic injury for Article III standing purposes.

### 2.    Overpayment Theory

In addition to the benefit-of-the-bargain theory, the parties also appear to agree Solis invokes an overpayment theory of Article III standing.  The Ninth Circuit has consistently recognized a concrete economic injury lies where the plaintiff alleges he or she "paid more for a product than [he or she] otherwise would have paid, or bought it when [he or she] otherwise would not have done so." *Hinojos*, 718 F.3d at 1104; *see McGee*, 982 F.3d at

- 15 -

707 (confirming the "overpayment" theory of Article III standing is a viable one in the Ninth Circuit).

It is well-established a plaintiff can demonstrate a concrete economic injury by showing he or she was induced into overpaying or purchasing a product he or she otherwise would not have, based upon either a defendant's (1) false representation and/or (2) actionable non-disclosure. *See Mazzo v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("Plaintiffs contend that class members paid more for the [braking system] than they otherwise would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims and failed to disclose the system's limitations. To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs alleged—they have suffered an 'injury in fact.'"); *Maya*, 658 F.3d at 1069 ("Plaintiffs claim that, as a result of defendants' actions, they paid more for their homes than the homes were worth at the time of sale. Relatedly, they claim that they would not have purchased their homes had defendants made the disclosures allegedly required by law. We agree with plaintiffs that these are actual and concrete economic injuries.").

However, in *McGee*, the Ninth Circuit alluded to a possible third subcategory of the overpayment theory. *See* 982 F.3d at 707. There, the Ninth Circuit left open the possibility that, by merely showing the item "contain[s] a hidden defect," a plaintiff may adequately allege economic injury under the overpayment theory in lieu of an identifiable misrepresentation or actionable omission. *Id.* (observing that *Birdsong* did not explicitly reject the premise a plaintiff can demonstrate a concrete economic injury by simply alleging he or she purchased a product with a hidden defect); *see also In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1117 (C.D. Cal. 2008) ("Plaintiffs also properly allege damages for the purchase price of the toys that allegedly were defective and not fit for their represented use. Plaintiff's claim is straightforward—they alleged that they purchased toys that were unsafe and unusable and should get their money back.").

Reading the Amended Complaint in a light most favorable to Solis, it appears she seeks to invoke all three sub-theories.

22cv0400

<u>Misrepresentation</u>:  Because Solis' benefit-of-the-bargain theory is deficient, so is this variant of her overpayment theory.  An identifiable, affirmative misrepresentation is the lynchpin of both theories.  *See McGee*, 982 F.3d at 707 (rejecting plaintiff's overpayment theory based upon misrepresentation and alluding to its benefit-of-the-bargain analysis).  As this Court already concluded, Solis fails to identify a single false representation about the Product's safety or grapple with the Product's PTFE disclosure.  Thus, the cases to which Solis cites are inapposite.  *See Zeiger*, 304 F. Supp. 3d at 842, 846 (finding valid overpayment theory where product label contained statements such as "Unrivaled Quality Standards" and "Optimal Health" but nowhere disclosed the presence of harmful lead, arsenic, and BPA); *Coffelt v. Kroger Co.*, No. EDCV 16-1471 JGB (KKx), 2017 WL 10543343, at *5 (C.D. Cal. Jan. 27, 2017) (finding valid overpayment theory where defendant's produce was labeled "Packed at Peak of Freshness" but were contaminated with a dangerous bacterial called "Listeria").  Accordingly, Solis fails to demonstrate the facts alleged in her Amended Complaint give rise to an overpayment theory of standing predicated upon a misrepresentation of Defendants.

<u>Omission</u>:  Solis avers "Defendants' Article III standing argument fails to address [her] claims premised on Defendants' omission and concealment."  (Opp'n at 10.)  But, unlike the cases Solis cites, the Product's label, here, discloses the very hazard Solis alleges Defendants had a continuing duty to disclose.  *See Galgetta v. Walmart, Inc.*, No. 3:22-cv-3757-WHO, 2022 WL 17812924, at *1 (N.D. Cal. Dec. 19, 2022) (alleging Walmart brand spices failed to disclose the possibility they contained "heavy metals" that are dangerous to humans).  Indeed, the Court need not look beyond the allegations in the Amended Complaint to conclude Solis fails to identify an actionable nondisclosure.  She alleges that all PFAS are harmful, that PTFE is a type of PFAS, and that the Product's label lists PTFE as one of the Product's ingredients.  (Am. Compl. ¶¶ 28, 46–48.)

In an apparent effort to harmonize her Amended Complaint with her claim Defendants omitted and concealed the Product's PFAS content, Solis argues Defendants' PTFE disclosure is both incomplete and insufficient.  Alluding to the scientific limitations

- 17 -

of PFAS screening, Solis avers "the exact source of organofluorine cannot be determined to solely come from [PTFE]." (Am. Compl. ¶ 48.)  From this fact, Solis asks the Court to infer there are other sources and types of PFAS in the Product.  While this Court is mindful of Solis' claim that it is not yet scientifically feasible to screen for discrete PFAS chemicals (*see id.* ¶¶ 4, 48), this is not a viable method of demonstrating Article III standing.  Even the lenient standard that controls this Motion prohibits this Court from making unwarranted inferences based on conclusory allegations unsupported by fact.[5]  *See Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) (explaining that "[w]hile the standard for reviewing standing at the pleading stage is lenient," a plaintiff may not "rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing"); *cf. Meaunrit v. Pinnacle Foods Grp., LLC*, No. C 09-04555 CW, 2010 WL 1838715, at *3 (N.D. Cal. May 5, 2010) (holding the mere allegation a product "*might contain* harmful pathogens" was a "speculative, hypothetical injury"); *accord Blackburn v. Champions Petfoods USA, Inc.*, No. 1:18-cv0038, 2021 WL 9682169, at *2 (S.D. Iowa Aug. 12, 2021) (similar).

Solis also argues in her Opposition that, by merely listing PTFE as an ingredient, Defendants fail to adequately disclose to consumers the Product contains PFAS.  (Opp'n at 19 ("Defendants assume that because the acronym 'PTFE' is disclosed on the ingredient list, that consumers like Plaintiff would automatically understand that PTFE is a type of PFAS.").)  But nowhere in the Amended Complaint does Solis make this straightforward allegation.  Instead, the Amended Complaint largely grapples with Defendants' PTFE disclosure by glossing over its existence.  (*See, e.g.*, Am. Compl. ¶ 62 (alleging Defendants

---

[5] Even if this Court were to find the Amended Complaint permits a reasonable inference the Product contains PFAS from another source (it does not), Solis still fails to allege what use a second disclosure would serve beyond the message conspicuously provided in the Product's ingredient list.  Solis alleges she was deceived into believing she had purchased a PFAS-free cosmetic item.  But the Product's ingredient list—as seen in Paragraph 28 in the Amended Complaint—should have dispossessed a reasonable consumer of that belief.  Hence, standing alone, the disclosure Solis appears to claim Defendants should have made is a superfluous one.

"omitted and concealed that the Product contains substances—organic fluorine which is indicative of PFAS—that are widely known to have significant health repercussions").)

Simply put, even construing the Amended Complaint in the light most favorable to Solis, her allegations do not support finding Defendants made an actionable omission about the Product's safety or PFAS contents. Rather, the Amended Complaint bears the indicia of a pleading that attempts to artfully plead around an express disclosure of the very contaminant the plaintiff alleges defendants had a duty to divulge.

<u>Hidden Defect</u>:  Finally, reading Solis' papers charitably, she appears to seek to invoke an overpayment theory on the basis of a hidden defect, as conceptualized by the Ninth Circuit in *McGee*. There, the Ninth Circuit held that the *McGee* plaintiff failed to plead a "hidden defect"—that defendant's popcorn contained trans fats—because the product's label disclosed trans fats and because the risk of health complications associated with trans fats were well-established at the time of the complaint. 982 F.3d at 709–10. The same is true here:  the Product's label discloses that a PFAS chemical is one of the item's ingredients (*see* Am. Compl. ¶¶ 28, 46–48) and, as Solis herself alleges, PFAS' carcinogenic and toxic qualities are "widely known" (*id.* ¶ 62). Accordingly, this third strand of Solis' overpayment theory fails, too.

Therefore, Solis' Amended Complaint must be dismissed under Rule 12(b)(1) for lack of standing.

### B.    Particularized Injury-in-Fact

Failure to allege a concrete *and* particularized injury in fact precludes a plaintiff from demonstrating Article III standing. *See Spokeo*, 578 U.S. at 340 (observing the Supreme Court has "made it clear time and time again that an injury in fact must be both concrete *and* particularized") (collecting authorities). Thus, this Court need not delve into Defendants' argument that Solis fails to allege a *particularized* economic injury. Yet it does so in the interests of completeness and streamlining the issues, should Solis attempt to cure the deficiencies identified above and should Defendants again seek to dismiss Solis' prospective second amended pleading under Rule 12(b)(1).

22cv0400

"Art[icle] III requires the party who invokes the court's authority to 'show that [s]he personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[.]'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).  Unless an injury affects the "plaintiff in a personal and individual way," it is not "particularized" and, thus, cannot form the basis for Article III standing.  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560 n.1).

"The 'gist of the question of standing' is whether the party seeking relief has 'alleged a personal stake in the outcome of the controversy as to assure that concrete adverseness . . . upon which the court so largely depends for illumination of difficult [legal] questions.'" *Flast v. Cohen*, 392 U.S. 83, 99 (1968) (quoting *Baker v. Carr*, 369 U.S. 186, 205 (1962)).  Indeed, Article III standing doctrine "derives from the interests in ensuring that parties have the proper incentives to litigate cases." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1005 (9th Cir. 2001).  With this doctrinal basis in mind, to demonstrate a particularized economic injury, here, Solis must proffer allegations that enable this Court to infer she purchased a unit of Product contaminated with PFAS.  *Cf. Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) ("In the context of defective products, ' it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect.'" (quoting *In re Zurn Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)) (emphasis in original)); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976))).

In the Amended Complaint, Solis alleges Toxin Free USA screened a sample of the Product at some unspecified time prior to July 2021, several months before Solis purchased her own unit of Product.  (Am. Compl. ¶¶ 6, 31.)  Toxin Free USA detected 6,242 parts per million of organic fluorine in the tested sample.  (*Id.* ¶ 6.)  However, Solis does not allege

she tested—or knows the precise chemical composition of—the unit of Product she purchased in December 2021.[6]  Defendants contend the absence of such allegations is fatal. (Mem. at 12–13 ("Plaintiff has evidently not undertaken even a basic investigation of the chemical composition of any Product unit she purchased.  She has not screened a unit of the Product for fluorine or organic fluorine[.]").)  In support, Defendants cite three cases for the legal premise that, to defeat a Rule 12(b)(1) facial challenge in an economic injury case involving the purchase of a purportedly adulterated product, a plaintiff must expressly allege the specific item he or she purchased is, in fact, adulterated.  (Mem. at 12–13 (citing *Schloegel v. Edgewell Personal Care Co.*, No. 4:21-CV-0631-DGK, 2022 WL 808694, at *1 (W.D. Mo. Mar. 16, 20122); *Doss v. Gen. Mills, Inc.*, No. 18-61924-CIV, 2019 WL 7946028, at *2–3 (S.D. Fla. June 14, 2019), *aff'd*, 816 F. App'x 312 (11th Cir. 2020); *Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-3052-SI, 2019 WL 5813422, at *1 (N.D. Cal. Nov. 7, 2019)).)

   To the extent those precedents might be fairly interpreted to support Defendants' contention, this Court respectfully disagrees Solis must, as a matter of law, proffer a formulaic recitation that the specific unit of Product she purchased contains PFAS.  Defendants do not cite to any Ninth Circuit decision that goes so far.  And that premise is incongruent with the standard under which Rule 12(b)(1) facial challenges are adjudicated: district courts must accept the allegations of the complaint as true and draw all reasonable inferences from those allegations in favor of the plaintiff.  *See Doe v. Holly*, 557 F.3d 1066,

---

   [6] Alongside her Opposition, Solis proffers a declaration from her counsel, Sean L. Litteral, attaching a copy "of the fluorine and organic fluorine testing results by Galbraith Laboratories, showing 7600ppm of Fluorine and 7600ppm of Organic Fluorine."  (Litteral Decl., Ex. 1 to Opp'n, ECF No. 20-1.)  The Galbraith's report indicates that the results pertain to a sample of "CoverGirl TruBlend Pressed Powder" that was screened on May 11, 2022.  (Lab Report, Ex. A to Litteral Decl., ECF No. 20-1.)  In her Opposition, Solis states that she commissioned Galbraith's report.  (Opp'n at 13–14.)  But nowhere in the Litteral Declaration or the Galbraith report does it indicate the test results pertain to the unit of Product Solis purchased in December 2021.  *See George v. Grossmont Cuyamaca Cmty. Coll. Dist. Board of Governors*, 22-cv-0424-BAS-DDL, 2022 WL 18330467, at *10 (S.D. Cal. Nov. 29, 2022) ("[S]tatements made in briefs neither constitute well-plead[ed] allegations entitled to the presumption of truth nor admissible evidence[.]").  Indeed, there is no attestation suggesting Solis purchased the unit of Product Galbraith tested.

1073 (9th Cir. 2009) (per curiam) (citing *Wolfe v. Stankman*, 392 F.3d 358, 362 (9th Cir. 2004)), *cert denied*, 561 U.S. 1024 (2010).  As the Supreme Court opined in *Lujan v. Defenders of Wildlife*, "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that the general allegations embrace those specific facts that are necessary to support the claim.'"  504 U.S. at 562 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

Thus, to survive Defendants' facial challenge, Solis need not explicitly allege the unit of Product she purchased actually contained PFAS or that all units of the Product contain PFAS, but may simply aver facts from which this Court can make such reasonable inferences.  The Amended Complaint permits just that.  Unlike in *Schloegel* and *Doss*, where the plaintiffs hedged their bets by averring "some" of the units of product at issue had been adulterated, Solis repeatedly alleges that the CoverGirl's TruBlend Pressed Powder, as a product line, contains PFAS.  (*See* Am. Compl. ¶¶ 10, 51, 62, 68, 139, 247.) Solis also alleges the Product's marketing and advertising "was uniform and pervasive." (*Id.* ¶ 64; *see also id.* ¶ 138.)  This would include the Product's labeling, which, as reflected in the image for which Defendants sought—and this Court granted—judicial notice, expressly discloses the Product contains PTFE.  These allegations distinguish the Amended Complaint from the pleadings in *Schloegel*, *Doss*, and *Pels*, because they contain facts that lend easily to the inference Solis purchased a unit of the Product with PFAS.  *Cf. Rice-Sherman v. Big Heart Pet Brands, Inc.*, Case No. 19-cv-3613-WHO, 2020 WL 1245130, at *7 ("A fair reading of their FAC shows that they allege that all Nature's Food recipe products are falsely advertised.  Nowhere in the FAC do plaintiffs allude that *some* of Nature's Recipe Food is grain-free but that a subset of the product is not.") (emphasis added); *Von Slomski v. Hain Celestial Grp., Inc.*, No. SACV131757AGANX, 2014 WL 12771116, at *5 (C.D. Cal. June 10, 2014) (finding allegations sufficient for standing because "Plaintiffs broadly allege[d] that the teas contain pesticides, rather than merely alleging that some of the packages contain pesticides").

22cv0400

Accordingly, the Court is unpersuaded by this strand of Defendants' Rule 12(b)(1) argument.

*     *     *     *

Based on the foregoing, the Court finds Solis does not sufficiently allege she suffered a concrete economic injury arising from her December 2021 purchase of the Product. Nor does Solis assert she suffered any other injury-in-fact that would supply her with Article III standing to pursue her claims. Accordingly, she fails to satisfy her burden of demonstrating the "triad of injury in fact, causation and redressability," which "constitutes the core of Article III's case-or-controversy requirement," and, thus, her Amended Complaint warrants dismissal under Rule 12(b)(1). *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998).

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion to dismiss the Amended Complaint pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. That dismissal is **WITHOUT PREJUDICE** to Solis filing a corrective pleading that resolves the deficiencies delineated herein. If Solis wishes to do so, she must file her Second Amended Complaint **on or before March 31, 2023**.

**IT IS SO ORDERED.**

**DATED: March 7, 2023**

Hon. Cynthia Bashant
United States District Judge

- 23 -

22cv0400